Annie Mary Timmons v. Commissioner.
Timmons v. Commissioner
Docket Nos. 8516, 12693.
United States Tax Court
1952 Tax Ct. Memo LEXIS 86; 11 T.C.M. (CCH) 944; T.C.M. (RIA) 52280; September 19, 1952
*86 Annie Mary Timmons, pro se. Percy C. Young, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: This proceeding has been returned to this Court under a mandate from the United States Court of Appeals for the Fourth Circuit, reading in part as follows: "It is now here ordered and adjudged by this Court that the decisions of the said The Tax Court of the United States, in this cause, be, and the same are hereby, vacated; and that this cause be, and the same is hereby, remanded to The Tax Court of the United States with direction to find the facts upon which the conclusions of the court are based, and with leave to hear additional evidence if of opinion that same should be heard, in accordance with the opinion of the Court filed herein." In accordance with the opinion of the Court of Appeals, and on the basis of the former record, we adopt and incorporate herein by reference the findings of fact set forth in our Memorandum Findings of Fact and Opinion entered on June 29, 1951, and make the following Supplemental Findings of Fact During the taxable periods in question the source of the petitioner's gross income was rentals *87 received from apartments owned and operated by her in the City of Columbia, South Carolina. Due to the influx of military personnel a housing shortage existed in that city and petitioner experienced no difficulty in procuring tenants whenever her apartments were available for occupancy. The books and records kept by the petitioner were insufficient and inadequate to furnish a proper source for determining the gross rentals received and the proper disbursements incurred by the petitioner in the taxable years 1941, 1942 and 1943. The bank records of the petitioner, the records of the public utility companies, business suppliers' records, rental contracts, Office of Price Administration records and other available sources of information from which the respondent reconstructed petitioner's gross income, furnished a reasonably accurate source for determining the number of apartments available and rented, the periods of occupancy and the average rentals received, and we adopt and apply such method to determine the petitioner's gross income for the taxable years in question. The OPA was not in existence in 1941 and no records from that source were available for the taxable year 1941. *88 It appears from the evidence that the rentals charged by the petitioner in 1941 were substantially equivalent to the prices fixed by the OPA and in effect for unfurnished apartments in the years 1942 and 1943. The average OPA price for 1942 and 1943 was $50 per month for unfurnished apartments of the character of those rented by the petitioner. In 1941 the petitioner had available and rented 35 unfurnished apartments. The periods of vacancy due to turnover, repairs and redecorating, we estimate to be 15 per cent of the year. An annual rental of $600 per year for 35 apartments, equaling $21,000, less 15 per cent for vacancies, or $3,150, gives a resultant figure of $17,850, an amount slightly in excess of the amount of $17,550 determined by the respondent. The petitioner received gross income from rentals of not less than $17,550 in the taxable year 1941. In such year petitioner had deductible items aggregating $12,094.84, consisting of business expenses incurred and paid in the amount of $8,816.84, taxes of $800, charitable contributions of $78, and depreciation of $2,400. The petitioner's net taxable income is the amount of $5,455.16 for the taxable year 1941. In the taxable year *89 1942 the petitioner owner and operated 64 apartments. These apartments were rented unfurnished for an average of $50 per month. By separate agreement with the tenants the petitioner rented some household furnishings. The additional income she received from this source averaged approximately $10 per month for the 64 units, making an average total rental of $60 per month per unit. Approximately 30 of the units were new and the period of vacancy due to repair and redecoration was lessened. The 64 units were rented and occupied approximately 87 per cent of the entire year 1942. An annual rental of $720 for each of the 64 units, equaling $46,080, less 13 per cent for vacancies, or $5,990.40, gives a resultant figure of $40,089.60. Using round figures we find that the petitioner's gross income for 1942 was the sum of $40,000. At the hearing the respondent conceded that the petitioner was entitled to deductions from gross income in the amount of $25,318.95 for 1942, which amount is in excess of the total deductions claimed by the petitioner on her return for such year. As the petitioner offered no further proof with respect to her deductions allowable, we find that petitioner is entitled *90 to deductions from gross income in 1942 of $25,318.95. The petitioner's net taxable income for the taxable year 1942 is $14,681.05. In the taxable year 1943 the petitioner owned and operated 64 apartments which she rented unfurnished at an average rental of $50 per month per unit. In addition, by separate contract, the petitioner rented some household furnishings for approximately one-half of the year 1943, when the furnishings were sold to a third party. The additional income of the petitioner from such source is fixed at an average of $5 per month for the 64 units, making an average total rental income of $55 per month per unit. Since the 30 new units acquired in 1942 were a year older, the periods of vacancy were slightly increased and estimated to be 14 per cent of the entire year 1943. An annual rental of $660 per unit for 64 apartments, equaling $42,240, less 14 per cent for vacancies, or $5,913.60, gives a resultant figure of $36,326.40. Using round figures we find that the petitioner received gross income from rentals of $36,000 in the taxable year 1943. At the hearing the respondent conceded that the petitioner was entitled to deductions from gross income in 1943 in the *91 amount of $27,903.80, which amount is in excess of the total deductions claimed by the petitioner on her return for such year. As the petitioner offered no further proof with respect to her allowable deductions, we find that petitioner is entitled to deductions from gross income in 1943 of $27,903.80. The petitioner's net taxable income for the taxable year 1943 is $8,096.20. Opinion Our opinion set forth in the Memorandum Findings of Fact and Opinion entered on June 29, 1951 [10 TCM 622;], is adopted and incorporated herein by reference. The parties will submit recomputations under the Rule. Decisions will be entered under Rule 50.